## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MICHAEL DIEHL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) Civil Action No. 09-948 |
| vs. | ) Judge Nora Barry Fischer |
| | ) |
| U.S. STEEL/EDGAR THOMSON WORKS, | ) |
| | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

**I.  Introduction**

Plaintiff, Michael Diehl ("Diehl"), has sued his formed employer, Defendant United States Steel Corporation ("Defendant"),[1] for discrimination pursuant to the Americans with Disabilities Act (the "ADA"), 42 U.S.C. §§ 12101, *et seq.*, and for wrongful discharge.[2] (Docket No. 22). Diehl claims that he was discharged because of his association with a disabled co-worker, Ralph Parise, and for having supported another co-worker, Ronald Vorassi's account of having been injured by Lee Mott, one of Diehl's supervisors. (Docket No. 22 at 7-8). This matter is before the Court on Defendant's Motion to Dismiss Diehl's Amended Complaint under Rule 12(b)(6), or in the alternative, for Summary Judgment pursuant to Rule 56 (Docket No. 25), in which Defendant argues that Diehl's filing of his Amended Complaint was untimely, and both of Diehl's claims fail as a

---

[1]   Defendant was incorrectly identified as U.S. Steel/Edgar Thomson Works. (*See* Docket No. 1). It has identified itself as United States Steel Corporation. (Docket No. 25 at 1).

[2]   This case is related to the matter at civil action number 09-844 brought by John Pekar against Defendant United States Steel Corporation, which is based on similar allegations. (*See* Civ. A. No. 09-844, Docket No. 20). In that case, Pekar has brought a claim under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621, *et seq.*, and a claim for wrongful discharge. (*Id.*).

1

matter of law. (Docket No. 25, *passim*). For the reasons discussed herein, Defendant's Motion (Docket No. 25) is GRANTED, and Diehl's Amended Complaint is dismissed, with prejudice.

## II.   Factual Background

Diehl, a resident of McKeesport, Pennsylvania, was hired by Defendant, a Pennsylvania corporation, on March 18, 2002 as a Mechanical Maintenance Technician. (Docket No. 22 at ¶¶ 2-3, 5). Diehl avers that throughout his employment with Defendant, he met applicable job qualifications and performed his job in a manner that met Defendant's expectations. (*Id.* at ¶ 9). On August 15, 2008, Diehl claims that he and his co-worker, John Pekar, were instructed by their immediate supervisor, Mark Cooke, to change the "F South Oxygen hose" (the "hose") with other co-workers. (*Id.* at ¶ 10). For this task, Cooke advised Diehl that it might be necessary to alter the gaskets on the hose, however, Diehl refused to make the requested alteration because to do so would violate written instructions from the manufacturer. (*Id.* at ¶¶ 11-13). Diehl alleges that Cooke thereafter determined that the gasket did not need to be altered. (*Id.* at ¶ 14).

Diehl claims that when he and Pekar went to change the hose, and after they removed the cardboard covering, they saw an object immediately inside the opening of the hose. (*Id.* at ¶¶ 23-24). Diehl avers that the object appeared to be a cloth rag and that he "never touched the object." (*Id.* at ¶¶ 26-27). Cooke was approximately 15 to 20 feet away from the hose when the covering was removed and Diehl claims that Pekar immediately called Cooke over to show him the object in the hose. (*Id.* at ¶¶ 28-29). Cooke then contacted Lee Mott, the Senior Process Leader, and requested that he come to the maintenance area, where Diehl and Pekar were, with his camera to take photographs of the hose and the object inside of it. (*Id.* at ¶¶ 30-31). Upon being instructed to do so, Diehl and Pekar then put the cardboard covering back on the hose, with the object still inside, and placed the

box with the hose back in the maintenance area. (*Id.* at ¶¶ 32-33). The hose was then removed by the "parts people" and another hose was brought in to be installed. (*Id.* at ¶ 34). Diehl claims that he and Pekar were required to work overtime to complete the installation of the hose. (*Id.* at ¶ 36). Prior to doing so, Diehl and Pekar made sure that there were no objects inside the new hose and the installation was successfully completed on August 15, 2008. (*Id.* at ¶¶37-38).

When Diehl reported to work the next Monday, August 18, 2008, he was advised by his supervisor, Lee Mott, that he was being escorted off of the property as a result of the situation with the object in the hose. (*Id.* at ¶¶ 40-43). At first, Diehl states that he was not sure to what Mott was referring but that Mott advised him that there was a video camera, and "it shows all." (*Id.* at ¶¶ 44-45). Contrary to Mott's assertions, Diehl avers that he did not place the foreign object in the hose. (*Id.* at ¶ 46). He received a notice that he was being disciplined for the following:

> (1) Case # 08063 Sabotage of company equipment balance of turn plus four day suspension "Justice and Dignity" will not apply this slip will run concurrently with the discipline received in slip # 08064.
>
> (2) Case # 08064 Contamination of company equipment balance of the turn plus four day suspension "Justice and Dignity" will not apply and this slip will run concurrently with the discipline slip above # 08063.

(*Id.* at ¶ 47). It is not averred whether Diehl served the suspension referenced above, rather, Diehl claims that Defendant advised him on August 22, 2008 that he was discharged from his position. (*Id.* at ¶¶ 48). On December 12, 2008, Diehl filed a charge of employment discrimination with the EEOC and the PHRC. (*Id.* at ¶ 49). Diehl claims that he received a notice of dismissal of his administrative charge with the EEOC, stating "that the informal methods of conciliation, conference and persuasion

had failed," which provided Diehl with the requisite notice of his right to file suit in federal court.[3] (*Id.* at ¶ 51).

In support of his ADA claim, Diehl contends that Defendant's decision to discharge him was motivated by his association with a disabled co-worker, Ralph Parise, in violation of the ADA. (*Id.* at ¶ 53). For this claim, Diehl asserts that Mott became angry with him on numerous occasions when Diehl would assist Parise, who has physical restrictions, and that Mott verbally chastised Diehl for the same. (*Id.* at ¶¶ 54-55). For his wrongful discharge claim, Diehl avers the following. On October 29, 2007, Diehl states that while he was on a break in the employee break room, he played a recorded "Looney Tunes" song over the broadcast system while his co-worker, Ronald Vorassi, sat in the break room. (*Id.* at ¶¶ 58-60). When Mott came into the break room, he struck Vorassi's elbow with the door, and then confiscated the radio from Diehl.[4] (*Id.* at ¶¶ 60-61). Diehl avers that Mott retaliated against him for having supported Vorassi's allegations that he was injured by Mott. (*Id.* at ¶¶ 62-63). Thus, Diehl contends that a termination of an at-will employee for verifying a co-worker's work-related injury is a violation of public policy and supports a claim for wrongful discharge. (*Id.* at ¶ 64). Diehl seeks damages in the form of past and future lost income from the date of his discharge and loss of health insurance and other fringe benefits for his claims. (*Id.* at ¶ 65).

### III. Procedural History

Diehl commenced this action by filing his initial Complaint on July 21, 2009 (Docket No.

---

[3] Of note, as discussed *infra*, Diehl does not aver the date upon which he received his EEOC right to sue letter.

[4] Ronald Vorassi was discharged by Defendant on October 31, 2007. *See Ronald Vorassi v. US Steel/Edgar Thomson Works*, Civ. A. No. 09-769, 2009 U.S. Dist. LEXIS 79257 (W.D. Pa. Sept. 3, 2009). In a case brought before the Honorable Arthur J. Schwab of this Court, Vorassi claimed that Mr. Mott injured his elbow on October 29, 2007 and that his discharge was in violation of the PHRA and the ADEA. (Civ. A. No. 09-769; Docket No. 1 at 2). Upon a Motion to Dismiss by Defendant, Vorassi's Complaint was dismissed pursuant to Rule 12(b)(6) as time-barred. *See Ronald Vorassi v. US Steel/Edgar Thomson Works*, Civ. A. No. 09-769, 2009 U.S. Dist. LEXIS 79257.

1), in which he brought claims under the ADA, the ADEA, the Pennsylvania Human Relations Act (the "PHRA"), 43 Pa. C.S. § 951, *et seq.*, and for wrongful discharge.[5] (*Id.*). Defendant filed a Motion to Dismiss the Complaint pursuant to Rules 12(b)(6) and 56 on September 21, 2009. (Docket No. 7). In his response filed on October 2, 2009, Diehl agreed to withdraw his ADEA claim, conceded that his PHRA claim was time-barred, and requested leave to amend his Complaint. (Docket No. 12 at 6). Upon consideration of Diehl's response (Docket No. 12), the Court dismissed Diehl's claims under the ADEA and the PHRA, and ordered Diehl to file an amended complaint by November 5, 2009, thereby mooting Defendant's motion to dismiss. (Docket No. 13).

The Court held a case management conference with counsel for the parties on October 29, 2009 and set down deadlines for fact discovery and for the completion of ADR. (Docket Nos. 18, 19, and 20). On November 10, 2009, Diehl filed his Amended Complaint (Docket No. 22), setting forth a claim for unlawful discrimination under the ADA and a pendent state law claim for wrongful discharge. (Docket No. 22). Defendant filed the instant Motion to Dismiss the Amended Complaint, or in the alternative, for Summary Judgment, and Brief in Support on November 25, 2009. (Docket Nos. 25 and 26). In support of the motion, Defendant attached the following: (1) Diehl's PHRA Charge of Discrimination (Docket No. 26-1); (2) Diehl's EEOC Right to Sue Letter (Docket No. 26-2); (3) the affidavit of Krista Marcin, the Department Manager for Labor Relations and Employment for Defendant's Mon Valley Works[6] (Docket No. 26-3); (4) the collective bargaining agreement

---

[5] Diehl also initially sued Defendant Hose Master, Inc., but on September 21, 2009 that Defendant was dismissed without prejudice pursuant to Federal Rule of Civil Procedure 41(a)(1)(A)(i) upon a stipulation by Diehl. (Docket Nos. 3 and 4).

[6] Defendant's Mon Valley Works includes four plants: the Clairton Plant in Clairton, PA; the Edgar Thomson Plant in Braddock, PA; the Irvin Plant in West Mifflin, PA; and the Fairless Plant in Fairless Hills, PA. (Docket No. 26-3 at 1); *see also* http://www.uss.com/corp/facilities/facilities.asp (last visited January 19, 2010). Diehl was assigned to the Edgar Thomson Plant. (Docket No. 22 at 1-2).

between Defendant and the United Steelworkers of America (Docket No. 26-4); and (5) the arbitration award from Diehl's union grievance (Docket No. 26-5). On December 15, 2009, Diehl filed his Brief in Opposition. (Docket No. 29). After being granted an extension of time to file a reply (Docket Nos. 30 and 31), Defendant filed its Reply to Diehl's Brief in Opposition on January 7, 2010.[7] (Docket No. 34). As Defendant's Motion is fully briefed, it is now ripe for disposition.

## IV. Standard of Review

To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009)(citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2008)); *see also Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009); and FED. R. CIV. P. 8(a)(2)(a valid complaint requires only "a short and plain statement of the claim" showing entitlement to relief."). The Supreme Court in *Iqbal* clarified that the decision in *Twombly* "expounded the pleading standard for 'all civil actions.'" *Iqbal*, 129 S.Ct. at 1953; *Fowler*, 578 F.3d at 210-11. The Court further explained that although a court must accept as true all of the factual allegations contained in a complaint, that requirement does not apply to legal conclusions; therefore, the pleadings must include factual allegations to support the legal claims asserted. *Iqbal*, 129 S.Ct. at 1949, 1953. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555); *see also Fowler*, 578 F.3d at 210; and *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008). The determination of whether a complainant has

---

[7] On January 8, 2010, the Court granted a motion by Defendant for extensions of time to complete fact discovery and the ADR process. (Docket Nos. 33 and 35). The Court ordered that the deadlines for the completion of fact discovery, the post-fact discovery status conference and the completion of ADR, as contained in the Case Management Order (Docket No. 19) and the order referring this case to Early Neutral Evaluation (Docket No. 20), are held in abeyance pending the Court's ruling on the instant motion. (Docket No. 25).

6

sufficiently pled a claim "is a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 129 S.Ct. at 1950 (citing *Twombly*, 550 U.S. at 556); *see also Fowler*, 578 F.3d at 210-11 (holding that in light of *Iqbal*, a district court should first separate the factual and legal elements of a claim and then, accepting the "well-pleaded facts as true," "determine whether the facts" pled are sufficient to show a "'plausible claim for relief.'"). Ultimately, to survive a motion to dismiss, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S.Ct. at 1949 (citing *Twombly*, 550 U.S. at 556).

Generally, the only documents a court may consider at the motion to dismiss stage, without converting the motion to dismiss into a motion for summary judgment, are those documents attached to the complaint. *Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). However, in evaluating a Rule 12(b)(6) motion, a court "may look beyond the complaint to matters of public record, including court files and records ... and documents referenced in the complaint or essential to a plaintiff's claim which are attached to either the [c]omplaint or the defendant's motion." *Spence v. Brownsville Area Sch. Dist.*, Civ. A. No. 08-0626, 2008 U.S. Dist. LEXIS 55026, at *7 (W.D. Pa. July 15, 2008)(citing *Pension Benefit*, 998 F.2d at 1196)). A court may consider "an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document." *Miller v. Clinton County*, 544 F.3d 542, 550 (3d Cir. 2008)(quoting *Pension Benefit*, 998 F.2d at 1196). Otherwise, a plaintiff with a legally insufficient claim could survive a motion to dismiss "simply by failing to attach a dispositive document on which it relied." *Pension Benefit*, 998 F.2d at 1196.

In the instant case, in moving to dismiss or in the alternative for summary judgment,

Defendant included a number of documents, listed above, that were not attached to Diehl's Amended Complaint. (*See* Docket No. 26-1 - 26-5). Two of these documents are EEOC and PHRC documents, which are matters of public record and may be considered by the Court without converting the motion to one for summary judgment. *Pension Benefit*, 998 F.2d at 119. Consideration of all the remaining documents attached to Defendant's motion, except for the affidavit of Krista Marcin (Docket No. 26-3), would not require the Court to convert the motion to one for summary judgment because the documents are integral to and explicitly relied upon by Diehl in his Amended Complaint and his Brief in Opposition to Defendant's motion (*see* Docket No. 29 at 8-10). *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997)(court may consider a "document *integral to or explicitly relied* upon in the complaint" without converting a motion to dismiss to a motion for summary judgment)(emphasis in original; quotation and citations omitted). Moreover, Diehl does not dispute the authenticity of these documents. *Pension Benefit*, 998 F.2d at 1196. Thus, in analyzing the motion, the Court will not consider the affidavit because it is neither relied upon by Diehl nor a public record. Further, it is not crucial to the Court's analysis herein. Accordingly, the Court will consider the remaining documents and analyze the motion under Rule 12(b)(6).

**V.    Discussion**

    **A.    Late Filing of Diehl's Amended Complaint**

Defendant first argues that Diehl's Amended Complaint (Docket No. 20) should be dismissed because it was filed five days late. (Docket No. 26 at 4). As noted, Diehl's Amended Complaint was due by November 5, 2009 (*see* Docket No. 13), but, it was not filed until November 10, 2009. (Docket No. 22). Because Diehl ignored the Court's deadline, Defendant argues, his Amended Complaint should be dismissed. (Docket No. 26 at 4). While Diehl does not dispute that his

Amended Complaint was filed five days late, counsel for Diehl states in his Brief in Opposition that she assumes full responsibility for same and assures that all future filings will be made in a timely manner. (Docket No. 29 at 6). Diehl argues that because Defendant has neither averred nor is able to show that it suffered any prejudice by the late filing, the dismissal of the Amended Complaint on the basis of its lateness is too harsh a remedy. (*Id.*). The Court agrees. Even allowing for three days for delivery of Diehl's Amended Complaint by November 8, 2009, *see Mosel v. Hills Dep't Store, Inc.*, 789 F.2d 251, 253 n.2 (3d Cir. 1986)(citing FED. R. CIV. P. 6(e)'s three day presumption), Diehl's filing is still 2 days late. Nonetheless, while counsel for Diehl certainly did not act in a diligent manner in accordance with this Court's order (Docket No. 13), the Court has discretion to strike the pleading or allow the untimely filing. *See Pioneer Inv. Servs. Co. v. Brunswick Assocs.*, 507 U.S. 308, 395 (1993)(court has discretion to forgive an untimely filing dependent on the relevant circumstances and the prejudice factor).[8] Additionally, dismissals under Rule 12(b)(6) for purposes of sanctioning a litigant are disfavored. *See Husick v. Allegheny County*, 304 Fed. Appx. 977 (3d Cir. 2008)(not-precedential)(citing *Stackhouse v. Mazurkiewicz*, 951 F.2d 29, 30 (3d Cir. 1991)(holding that Rule 12(b)(6) motions should not be granted without an analysis of the merits of the underlying complaint)). Thus, because Defendant has not alleged any prejudice, the Court will not punish Diehl for his counsel's admitted inadvertence. Rather, the Court warns Diehl's counsel to act more diligently in the future and to comply with the time limits proscribed in the Federal Rules of Civil Procedure and by this Court.

---

[8] In *Pioneer*, the Supreme Court noted its prior precedent that a client must be held accountable for the acts and omissions of their attorneys. *Pioneer*, 507 U.S. at 396 (citing *Link v. Wabash R. Co.*, 370 U.S. 626 (1962); and *United States v. Boyle*, 469 U.S. 241 (1985)(where the court penalized the client for their counsel's tardy filing of a tax return)). Here, as noted *supra*, because Defendant has not shown that is has suffered any prejudice, the Court will not penalize Diehl for his counsel's neglect.

B.      Timeliness of Diehl's ADA Claim

Defendant next moves to dismiss Diehl's ADA claim on the grounds that it is time-barred because he failed to file the instant lawsuit within 90 days after receiving his right to sue letter from the EEOC. (Docket No. 26 at 5). In support of this argument, Defendant points out that while Diehl avers he was provided notice of his right to file suit, he fails to aver when he received his right to sue letter, despite his burden to do so. (*Id.*; Docket No. 32 at 3). Defendant contends that Diehl did not file this case until 112 days after the EEOC issued and mailed Diehl his right to sue letter. (*See* Docket No. 26-2). Because Diehl has neither met his burden of demonstrating that his ADA claim was timely filed nor presented any reasons to justify equitable tolling of the limitations periods, Defendant moves for dismissal of his ADA claim. (Docket No. 26 at 5-6). Notwithstanding the untimely filing of Diehl's case, Defendant also moves to dismiss Diehl's ADA claim on the grounds that he has failed to plead sufficient factual matter to show that he is entitled to relief under the ADA. (*Id.* at 6).

Diehl maintains that there is no requirement that he plead the date upon which he received his right to sue letter from the EEOC.[9] (Docket No. 29 at 6-7). Nevertheless, Diehl states that he will respond to questions concerning the date of receipt of his EEOC Notice of Right to Sue at the time of his deposition. (*Id.*). He also argues his contention that his allegation of timely filing is sufficient. (*Id.*). As discussed below, these arguments are without merit.

The filing of an administrative charge and the receipt of a right to sue letter, although not jurisdictional prerequisites, are statutory prerequisites to commencing a civil action under Title VII

---

[9] As noted by Defendant (Docket No. 32 at 5, n.2), the Court recalls that the plaintiff in the related case of *Pekar v. U.S. Steel*, Civ. A. 09-844, shares the same counsel as Diehl. Unlike Diehl's pleadings, both the Complaint and Amended Complaint in *Pekar* specifically aver the exact date on which Mr. Pekar received his EEOC right to sue letter. (Civ. A. No. 09-844, Docket No. 1 at 8, Docket No. 20 at 8).

or the ADA.[10] *See Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982); *McNasby v. Crown Cork & Seal Co., Inc.*, 888 F.2d 270, 282 (3d Cir. 1989), *cert. denied*, 494 U.S. 1066 (1990). The receipt of the right to sue letter indicates that a complainant has exhausted administrative remedies, an essential element for bringing a claim in federal court. *Anjelino v. New York Times Co.*, 200 F.3d 73, 93 (3d Cir. 1999); *Robinson v. Dalton*, 107 F.3d 1018, 1020 (3d Cir. 1997). After a claimant receives a right to sue letter from the EEOC, he has 90 days to file a complaint in federal court. 42 U.S.C. § 2000e-5(f)(1); *Burgh v. Borough Council*, 251 F.3d 465, 470 (3d Cir. 2001). The on-set of the 90 day period is generally considered to be the date on which the complainant receives the right to sue letter. *Seitzinger v. Reading Hosp. and Med. Ctr.*, 165 F.3d 236, 239 (3d Cir. 1999).

The 90 day limitations period is to be "strictly construed" and "in the absence of some equitable basis for tolling, a civil suit filed even one day late is time-barred and may be dismissed." *Burgh*, 251 F.3d at 471; *see also Balis v. Realtyline*, Civ. A. No. 08-3456, 2009 U.S. Dist. LEXIS 23867, at *9-11 (D.N.J. Mar. 25, 2009); *Carlton v. City of Phildelphia*, Civ. A. No. 03-1620, 2004 U.S. Dist. LEXIS 5569, at *5-6 (E.D. Pa. Mar. 30, 2004)(citing *Burgh*, 251 F.3d at 470)(court denied motion to dismiss plaintiff's claims on the basis that plaintiff had sufficiently pled exhaustion by averring specific dates on which she received her EEOC right to sue letter). Because the 90 day rule is analogous to a statute of limitations, it is subject to equitable modifications, such as tolling. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 393 (1982). However, the remedy of equitable tolling may only be employed in limited, extraordinary circumstances to prevent the remedy from being "readily invoked by those who have missed carefully drawn deadlines." *Robinson*, 107 F.3d at 1023

---

10

The ADA adopted the enforcement scheme and remedies found in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e, *et seq. See* 42 U.S.C. § 12117(a).

(3d Cir. 1997); *see also Oshiver v. Levin*, 38 F.3d 1380, 1387 (3d Cir. 1994); *Lake v. Arnold*, 232 F.3d 360, 370 n.9 (3d Cir. 2000). To successfully establish the remedy of equitable tolling, a plaintiff must exercise reasonable diligence in preserving a claim. *In re Mushroom Transp. Co.*, 382 F.3d 325, 339 (3d Cir. 2004). To this end, it is the plaintiff's burden to demonstrate the applicability of equitable tolling and the exercise of reasonable diligence. *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000); *Byers v. Follmer Trucking Co.*, 763 F.2d 599, 600-01 (3d Cir. 1985).

In his Amended Complaint, Diehl avers that he received his EEOC notice of his right to sue after "informal methods of conciliation, conference, and persuasion had failed." (Docket No. 22 at ¶ 51). But, Diehl does not set forth the date on which he received his right to sue letter nor does he state that his suit was filed within the requisite 90 days, despite his obligation to do so. *Byers*, 763 F.2d at 600-01; *Oshiver*, 38 F.3d at 1384. Diehl's EEOC right to sue letter, "issued on request," was mailed on March 31, 2009. (Docket No. 26-2 at 1). This letter advised Diehl that "[y]our lawsuit under Title VII or the ADA must be filed in federal or state court WITHIN 90 DAYS of your receipt of this notice." (*Id.*)(emphasis in original). Allowing three days after the EEOC mailed the letter for delivery, Diehl is presumed to have received his right to sue letter on April 3, 2009. *See Seitzinger*, 165 F.3d at 239. Thus, he was required to file the instant lawsuit by July 3, 2009. However, Diehl did not file suit until July 21, 2009 (*see* Docket No. 1), 118 days after he received his EEOC right to sue letter. As a result, Diehl has failed to meet the statutory prerequisites for filing a lawsuit under the ADA in federal court, and his claim is time-barred. *See Burgh*, 251 F.3d at 471 (a lawsuit filed even one day past the 90 days is time-barred).

Despite Diehl's arguments to the contrary, when a discrimination claim appears to be time-barred, as is the case here, the burden is on the plaintiff to assert or establish facts that justify

equitable tolling. *Arizmendi v. Lawson*, 914 F.Supp. 1157, 1160 (E.D. Pa. 1996)(citing *Byers*, 763 F.2d at 600-01). In such circumstances, a plaintiff should at least "plead the applicability of the doctrine" of equitable tolling. *Oshiver*, 38 F.3d at 1391; *see also Kach v. Hose*, Civ. A. No. 08-3921, 2009 U.S. App. LEXIS 28210 (3d Cir. Dec. 23, 2009). Consequently, Diehl has the burden of establishing the timeliness of his ADA claim or provide reasons that would justify tolling the 90 day period. Yet, he has made no specific allegation that his claim was timely filed or that the limitations period should be tolled for equitable reasons despite amending the Complaint. Nor has Diehl set forth any argument in opposition to Defendant's challenge to the timeliness of his claim. Therefore, the Court finds that Diehl has failed to satisfy his burden of demonstrating the timeliness of his ADA or reasons justifying equitable tolling of same. In addition, the Court finds that it would be futile to permit Diehl to amend this claim for a second time. *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000). As a result, Diehl's ADA claim is dismissed, with prejudice, as untimely. *See Arizmendi*, 914 F.Supp. at 1161.

Having ruled that Diehl's claim under the ADA is barred by the applicable limitations period, the Court need not address Defendant's argument for dismissal on the grounds that Diehl failed to plead his ADA claim with the requisite specificity. (*See* Docket No. 26 at 6-7).

### C. Diehl's Wrongful Discharge Claim

Defendant next moves to dismiss Diehl's state law claim for wrongful discharge. In support thereof, Defendant points out that Diehl was not an at-will employee, rather, he was a union member of the United Steelworkers of America whose employment was subject to a collective bargaining agreement ("CBA") with Defendant. (Docket No. 26 at 8-9; *see* Docket Nos. 26-4, 26-5). As such, he cannot maintain a cause of action for wrongful discharge as the CBA protects him from

indiscriminate discharge. (Docket No. 26 at 9-10). Moreover, Defendant argues, Diehl had the opportunity to fully grieve his discharge through the available grievance and arbitration provisions outlined in the CBA, which constituted the "sole procedure" for any claims that Defendant violated the CBA. (Docket No. 26 at 10; Docket No. 26-4 at 3, 7-11). Because Diehl fully grieved his termination and went through all steps of the grievance procedure, which included an arbitration (*see* Docket No. 26-5), Diehl's wrongful discharge claim should be dismissed. (Docket No. 26 at 10).

Diehl argues in response that he is entitled to bring this claim despite the fact that he was a member of a collective bargaining unit at the time of his discharge because the remedy he now seeks for this claim, namely the loss of past and future income, was not available to him under the CBA and he was not successful at his arbitration hearing.[11] (Docket No. 29 at 9). For this proposition, Diehl cites to the dissenting opinion in *Phillips v. Babcock & Wilcox*, 503 A.2d 36 (Pa. Super. 1986), *appeal denied*, 521 A.2d 933 (Pa. 1987), wherein then President Judge Edmund Spaeth, Jr. opined that the "public interests implicated in the retaliatory discharge of a contractual employee are no less than those implicated in the retaliatory discharge of an at-will employee, and deserve no lesser protection." *Phillips*, 503 A.2d at 358 (J., Spaeth, dissenting).[12] Diehl further argues that this cause of action should stand because the allegations he now makes for his claim relating to his support of his co-worker, Ronald Vorassi's injury by Mott were not the subject of the arbitration proceedings. (*Id.* at 9-10). Hence, Diehl contends that this claim has not been heard in any forum and he should

---

[11] The Court notes that Diehl's assertion that he is seeking remedies in this Court that were not available to him under the CBA is not entirely accurate. The arbitration award for Diehl's grievance states that the remedy requested by Diehl was to return to work, and "pay all monies due and make employee [sic] whole." (Docket No. 26-5 at 1).

[12] It should be noted that before the expiration of Judge Spaeth's term on the Superior Court of Pennsylvania, he joined in the majority opinion in *Phillips* that union employees protected by a CBA could not bring a wrongful discharge claim. *See Phillips*, 503 A.2d 36 (emphasis added).

14

not be precluded by his union membership from pursuing a wrongful discharge claim. (*Id.* at 10).

The action for wrongful discharge in Pennsylvania was judicially created by the Pennsylvania Supreme Court in the case of *Geary v. United States Steel Corp.*, 456 Pa. 171, 319 A.2d 174 (Pa. 1974). In *Geary*, the court carved out a very narrow exception to the established rule, referred to as the "at-will doctrine," which provides that absent a statutory or contractual provision to the contrary, either party could terminate an employment relationship for no reason or any reason at all. *See also Phillips v. Babcock & Wilcox*, 349 Pa. Super. 351, 503 A.2d 36, 37 (Pa. Super. 1986); *Murray v. Commercial Union Ins. Co.*, 782 F.2d 432, 434-35 (3d Cir. 1986). Where no clear mandate of public policy is violated by the termination of an at-will employee, an employee at-will has no cause of action for wrongful discharge.[13] *Geary*, 319 A.2d 174; *Phillips*, 503 A.2d at 37. Thus, it is implied in *Geary* that an employee at-will can maintain a wrongful discharge claim where "a clear mandate of public policy has been violated by the termination." *Phillip*, 503 A.2d at 37. The Superior Court of Pennsylvania has held that the purpose of the holding in *Geary* was to provide a remedy for employees with no other recourse, whether it be contractual or statutory, against wrongful discharge. *Id.*

Under Pennsylvania law, however, "an employee represented by a labor union and covered by a collective bargaining agreement cannot maintain" an action for wrongful discharge. *Coppola v. JNESO-Pocono Med. Ctr.*, Civ. A. No. 08-798, 2009 U.S. Dist. LEXIS 76420, *6 (M.D. Pa. Aug. 29, 2009)(citations omitted). On this point, Pennsylvania courts have made it clear that the tort of

---

[13]

An at-will employee is defined as one whose employment is not governed by a written contract for a specific term and who is terminable at the will of either the employer or the employee. *Werner v. Zazyczny*, 545 Pa. 570, 681 A.2d 1331 (Pa. 1996); *see also Hokanson v. Vygon US, LLC*, 2009 Phila. Ct. Com. Pl. LEXIS 210, at *3-4 (Pa. C.&D. 4th, Aug. 28, 2009)("at-will" simply means that "absent a statutory or contractual provision to the contrary, the law has taken for granted the power of either party to terminate an employment relationship for any reason or no reason.")

wrongful discharge does not extend to union employees covered and protected by a CBA. *Coppola*, 2009 U.S.Dist. LEXIS 76420, at *6 (citing *Harper v. Am. Red. Cross Blood Servs.*, 153 F.Supp.2d 719, 721 (E.D. Pa. 2001); and *Phillips*, 503 A.2d 36).

Based on the above-cited cases, it is clear that Diehl is not entitled to pursue a wrongful discharge claim. It is undisputed that Diehl was not an at-will employee, but rather, he is a member of the United Steelworkers of America ("USWA") and a member of the bargaining unit. (*See* Docket No. 26-4; Docket No. 29 at 9-10). It is further undisputed that as a member of this union, Diehl's employment with Defendant was governed by a CBA negotiated between Defendant and USWA, which was in effect at the time of Diehl's discharge. (*Id.*). In his Amended Complaint, Diehl avers that he was employed as a Mechanical Maintenance Technician (Docket No. 22 at ¶ 5). The CBA specifically provides that it is applicable to all Maintenance Technician (mechanical or electrical) positions. (Docket No. 26-4 at 28). The CBA further provides in detail the grievance procedure available to Diehl and other bargaining unit employees to challenge their dismissals. (*Id.* at 6-26). Diehl does not contest the fact that if a covered employee believes their discharge was without proper cause, he may bring a grievance under the applicable grievance and arbitration provisions. (*Id.*). The CBA also states that its provisions "constitute the sole procedure for the processing and settling of any claim by an Employee or the Union of a violation by the Company of this Agreement." (*Id.* at 3). Based on these facts, under Pennsylvania law, Diehl is not within the category of employees that may pursue the cause of action for wrongful discharge. *See also Coppola*, 2009 U.S. Dist. LEXIS 76420, at *6.

Because the Court has ruled that Diehl cannot maintain a claim for wrongful discharge due to his participation in the CBA, any new allegation Diehl now makes to contest his discharge is not

properly before the Court. In response to Diehl's argument that the allegations he now makes in support of his wrongful discharge claim have not been previously litigated, the Court notes that Diehl was aware of these claims, which occurred prior to his discharge on August 18, 2008, when he filed his grievance on August 25, 2008.[14] (Docket No. 26-5 at 2). On this point, it is uncontested that Diehl fully grieved his termination and went through all the steps of the grievance procedure, including arbitration. (Docket No. 29 at 9-10; Docket No. 26-5). After a full hearing, the arbitrator found in favor of Defendant, and denied Diehl's grievance. (Docket No. 26-5 at 13-14). Thus, Diehl should have raised these claims during the arbitration process, which is the "sole procedure" for adjudicating contractual disputes between Diehl and his employer. (*See* Docket No. 26-4 at 3); *Randolph v. Cooper Indus.*, 879 F.Supp. 518, 521 (W.D. Pa. 1994).

The Court also finds no merit in Diehl's argument that because he was unsuccessful with his grievance, he has no other remedy available to him. As correctly pointed out by Defendant, Diehl could have pursued an action for statutory remedies under federal labor law, i.e. under section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. 185, for breach of the terms of the CBA. *See also Raczkowski v. Empire Kosher Poultry*, 185 Fed. Appx. 117 (3d Cir. 2006)(not-precedential); *Beidleman v. Stroh Brewery Co.*, 182 F.3d 225 (3d Cir. 1999). His failure to file suit under the LMRA does not give him the right to now seek redress that is only available to at-will employees. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 171-72 (1983). Accordingly, the Court finds that Diehl's claim for wrongful discharge fails and said claim is dismissed, with prejudice.

---

[14] *See* note 4, *supra*, wherein the Court cited to Ronald Vorassi's lawsuit against Defendant in which he claimed that Mr. Mott injured his elbow on October 29, 2007. (Civ. A. No. 09-769; Docket No. 1 at 2).

**VI.     Conclusion**

For the foregoing reasons, the Court finds that Diehl's ADA claim fails as it barred by the applicable 90 day statutory period. The Court also finds that Diehl's Pennsylvania state law claim for wrongful discharge fails as he is not an at-will employee. Accordingly, Defendant's Motion to Dismiss (Docket No. [25]) is GRANTED, and Diehl's Amended Complaint (Docket No. [22]) is dismissed, with prejudice. An appropriate order follows.

*s/ Nora Barry Fischer*
Nora Barry Fischer
United States District Judge

CC/ECF:     All counsel of record.